United States Courts
Southern District of Texas
FILED

*May 13, 2022*

Nathan Ochsner, Clerk of Court

**4:22-mj-1101**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,

　　　　Plaintiff,

　　v.

SWITZERLAND MONET BURNS,

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and

COURTNEY CHRISTOPHER MORRIS,

　　　　Defendants.

Criminal Action No. 22-41-UNQ

SEALED
REDACTED

FILED
APR 26 2022

## INDICTMENT

The Grand Jury for the District of Delaware charges that:

## BACKGROUND

At all times relevant to this Indictment:

*Overview of the Conspiracy*

1.　Beginning in or around June 2020, defendants agreed and conspired with co-conspirators known and unknown to the Grand Jury to launder the proceeds of a scheme to defraud the U.S. Small Business Administration ("SBA") through bank accounts opened by defendants and their co-conspirators. As explained in more detail below, in March 2020, the U.S. government authorized a significant amount of funding to assist small businesses experiencing financial difficulties as a result of the COVID-19 pandemic. As part of the conspiracy to defraud the SBA, members of a criminal organization submitted multiple false and fraudulent loan applications to the SBA using information that had been stolen from farming-related businesses across the country. In order to create layers of distance between the fraudulent proceeds and the criminal actors responsible for committing the fraud, criminal organizations, including the criminal

organization that conspired to defraud the SBA, require networks of individuals to launder the proceeds of the conspiracy. Although these individuals, called "money mules," are often not aware of many of the logistical details regarding the fraud, they knowingly participate in the conspiracy by engaging in financial transactions designed to conceal and disguise the location, source, ownership, and control of the proceeds of the fraud. In exchange, money mules keep a portion of the fraudulent proceeds for themselves.

2. Defendants agreed and conspired to serve as money mules for the criminal organization's conspiracy to defraud the SBA. Defendants opened bank accounts, often in the names of sham business entities, that received the proceeds of the fraudulent SBA loan applications. Once the SBA deposited the fraudulent proceeds into their bank accounts, defendants quickly transferred the proceeds, often the same day, into other bank accounts controlled by defendants or other members of the conspiracy. Defendants used portions of the fraudulent proceeds for their personal expenditures, including the purchase of meals, luxury goods, travel, and cash withdrawals.

*Defendants and Relevant Individuals*

3. SWITZERLAND MONET BURNS is a citizen of the United States who resided in Texas within the Southern District of Texas.

4. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ is a citizen of Liberia who resided in Delaware within the District of Delaware.

5. COURTNEY CHRISTOPHER MORRIS is a citizen of the United States who resided in Texas within the Southern District of Texas.

6. INDIVUDAL A is a citizen of the United States who resided in Pennsylvania within the Eastern District of Pennsylvania.

*The CARES Act and Economic Disaster Injury Loan Program*

7. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic. One form of funding allocated by the CARES Act involved the Economic Injury Disaster Loan ("EIDL") program. The EIDL program was administered by the SBA and provided long-term, low-interest loans to small businesses that experienced substantial economic disruption as a result of a declared disaster, such as the COVID-19 pandemic.

8. In order to obtain an EIDL, a qualifying business was required to submit an application to the SBA through an online portal and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. As part of the application, the applicant also provided a bank account and email address. Applicants were required to certify that the information listed in the application was true and correct to the best of the applicant's knowledge.

9. The SBA primarily communicated with applicants using the email address listed in the EIDL application. If the EIDL was approved, applicants digitally signed the loan documents. In addition to sending the completed loan documents to recipients by email, the SBA sent copies of loan documents to recipients by U.S. mail. The maximum amount of EIDL loans during the relevant period was $150,000. EIDL funds appeared in the recipient's identified bank account as a deposit from the SBA U.S. Treasury in the amount of the loan, minus a $100 fee.

*Multiple Fraudulent EIDL Applications Submitted to the SBA Using Stolen Information*

10. Beginning in or about June 2020 and continuing through on or about August 2020, members of the conspiracy submitted or caused to be submitted multiple fraudulent EIDL applications to the SBA. At least 95 EIDL applications were submitted using information that had been stolen from farming-related businesses throughout the country. In reality, none of the businesses had submitted EIDL applications.

11. Each of the EIDL applications had been submitted from the same IP address and listed variations of the same five email addresses as the primary means of contact for purported applicants. The IP address and email addresses used to submit the EIDL applications had been procured by members of the conspiracy. In addition to the IP address used to submit the 95 EIDL applications, several additional IP addresses were also used to submit multiple additional fraudulent EIDL applications to the SBA.

12. As a result of the fraudulent EIDL applications submitted as part of the conspiracy, the SBA approved at least eighteen EIDL applications that totaled approximately $1.3 million. After the EIDL applications had been approved, the SBA initiated and caused to be transmitted electronic wire transfers to the bank accounts listed on the fraudulent EIDL applications. Such electronic wire transfers were in or affecting interstate commerce.

13. One of the fraudulent EIDL applications submitted as part of the conspiracy had been submitted on behalf of FARM A, a small farm located in Lincoln, Delaware, within the District of Delaware. The SBA approved the FARM A EIDL and sent copies of the loan documents through the U.S. mail to the owners of FARM A at their address in Delaware.

*Bank Accounts Opened to Receive and Transfer Fraudulent EIDL Proceeds*

14. BURNS, ▆▆▆, MORRIS, and INDIVIDUAL A opened bank accounts, the purpose of which was to receive fraudulent EIDL proceeds and to transfer the proceeds to other accounts in order to conceal the source of the funds. Specifically, the following bank accounts, among others, were opened and used in furtherance of the conspiracy:

   a. BURNS opened, controlled, and was the sole signatory for the following bank accounts, including but not limited to:

      i. a Woodforest business checking account ending in -7707 (the "BURNS Woodforest account"), in her own name and doing business as Midnight Tats.

   b. ▆▆▆ opened, controlled, and was the sole signatory for the following bank account, including but not limited to:

      i. a J.P. Morgan Chase ("Chase") business checking account ending in -▆▆▆ (the "▆▆▆ Chase account"), in his own name and doing business as ▆▆▆ that ▆▆▆ opened in the District of Delaware.

   c. MORRIS opened, controlled, and was the sole signatory for the following bank accounts including but not limited to:

      i. a Woodforest National Bank ("Woodforest") business checking account ending in -1481 (the "MORRIS Woodforest account"), in his own name and doing business in the name of FARM B;

5

ii. a Wells Fargo business checking account ending in -4918 (the "MORRIS Wells Fargo account"), in his own name and doing business in the name of FARM C; and

iii. a Bank of America ("BOA") business checking account ending in -3110 (the "MORRIS BOA account"), in his own name and doing business in the name of FARM C.

d. INDIVIDUAL A opened, controlled, and was the sole signatory for the following bank accounts, including but not limited to:

i. a Chase business checking account ending in ▇▇▇, in her own name and doing business as ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

*Fraudulent EIDL Applications Funded by SBA*

15. As relevant to this Indictment, the SBA funded at least eighteen fraudulent EIDL applications submitted as part of the conspiracy, including but not limited to, the following businesses:

| Date | Business | Amount | Account Funded |
|---|---|---|---|
| 6/29/2020 | FARM D | $144,800 | ▇▇▇ Chase account |
| 7/22/2020 | FARM E | $143,600 | MORRIS Wells Fargo account |
| 8/10/2020 | FARM F | $146,900 | MORRIS Woodforest account |

*Financial Transactions Designed to Conceal the Fraudulent Nature of EIDL Proceeds*

16. Once the SBA funded the fraudulent EIDL applications set forth in the preceding table, defendants engaged in multiple financial transactions involving the proceeds with the intent to disguise the fraudulent nature and source of the proceeds. Specifically, the following transactions furthered the objectives of the conspiracy:

a. **FARM D EIDL**: On June 29, 2020, the SBA initiated a $144,700 electronic wire transfer to the ███ Chase account for the FARM D EIDL. The next day, ███ wrote and deposited a $138,500 check from the ███ Chase account to the INDIVIDUAL A Chase account. ███ wrote the check and deposited it into the INDIVIDUAL A Chase account within the District of Delaware. Two days later, on July 2, 2020, INDIVIDUAL A initiated a $55,400 wire transfer to another bank account. The same day, INDIVIDUAL A withdrew $14,000 in cash.

b. **FARM E EIDL**: On July 22, 2020, the SBA initiated a $143,600 electronic wire transfer to the MORRIS Wells Fargo account for the FARM E EIDL. The same day, MORRIS wrote a $140,000 check made payable to FARM C, another farm-related business that had a fraudulent EIDL application submitted to the SBA as part of the conspiracy. On July 23, the $140,000 check was deposited into the MORRIS BOA account. Approximately a week later, on August 3, 2020, MORRIS wrote a $98,500 check made payable to BURNS that had been drawn from the MORRIS BOA account. That $98,500 check was deposited into the BURNS Woodforest account the next day, August 4, 2020. MORRIS also withdrew approximately $28,000 in cash on August 3, 2020. On August 31, MORRIS withdrew the remaining $857 from the MORRIS BOA account, leaving the balance at zero.

c. **FARM F EIDL**: On August 10, 2020, the SBA initiated an electronic wire transfer of $146,900 to the MORRIS Woodforest account for the FARM F. The following day, August 11, 2020, MORRIS wrote a $115,000 check made

7

payable to BURNS that was deposited into the BURNS Woodforest account the same day. Between August 12 and August 13, MORRIS depleted the majority of the remainder of the FARM F EIDL by obtaining $13,000 in cash. On August 14, MORRIS withdrew the last remaining $23.00 out of the MORRIS Woodforest account, leaving the balance at zero.

*Proceeds from Fraudulent EIDLs Used for Cash, Travel, and Luxury Goods*

17. Between on or about June 2020 and August 2020, the BURNS Woodforest account received approximately $213,000 in proceeds from fraudulent EIDLs. BURNS or members of the conspiracy known or unknown to the Grand Jury withdrew the proceeds in cash, used the proceeds for travel and luxury goods, or transferred the proceeds to co-conspirators. None of the proceeds of fraudulent EIDLs that were transferred into the BURNS Woodforest account were used for legitimate business purposes related to the EIDL applications submitted to the SBA.

18. Between on or about June 2020 to July 2020, the INDIVIDUAL A Chase account received approximately $138,500 in proceeds from fraudulent EIDLs. INDIVIDUAL A and members of the conspiracy withdrew the proceeds in cash, used the proceeds for personal purchases, or transferred the proceeds to co-conspirators. None of the proceeds of fraudulent EIDLs that were transferred into the INDIVIDUAL A Chase account were used for legitimate business purposes related to the EIDL applications submitted to the SBA.

## COUNT ONE

(Conspiracy to Commit Money Laundering – 18 U.S.C. § 1956(h))

*Objects of the Conspiracy*

19. Paragraphs 1 through 18 are re-alleged and incorporated by reference as if fully set forth herein.

20. From in and around June 2020 and continuing thereafter up to the date of this Indictment, the exact dates being unknown to the Grand Jury, in the District of Delaware and elsewhere, the defendants, BURNS, ▇ and MORRIS did knowingly and intentionally combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956 and Section 1957, to wit:

    a. conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, and mail fraud, in violation of Title 18, United States Code, Section 1341, knowing that the transactions were designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, that is wire fraud and mail fraud; and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. 1956 (a)(1)(B)(i); and

    b. knowingly engage and attempt to engage in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud and mail fraud, in violation of Title 18, United States Code, Section 1957.

*Manner and Means*

The objects of the conspiracy were to be accomplished by the following manner and means, among others:

21. Members of the conspiracy used stolen identities of individuals and businesses to submit fraudulent EIDL applications to the SBA.

22. Members of the conspiracy electronically submitted false and fictitious information to the SBA in support of the fraudulent EIDL applications, including false or fictitious email addresses and bank accounts.

23. Defendants BURNS, ████, and MORRIS, and other members of the conspiracy, opened bank accounts in their own names, and in the names of unrelated individuals and business entities, for the purpose of receiving funds from the SBA obtained through the fraudulent EIDL applications.

24. Members of the conspiracy directed the SBA to deposit the proceeds from the fraudulent EIDLs into bank accounts that defendants ████ and MORRIS had opened.

25. Defendants BURNS, ████, and MORRIS engaged in financial transactions that furthered the objectives of the conspiracy, to wit: sending checks and initiating wire transfers under false pretenses; receiving and shipping checks involving the proceeds of the conspiracy; depositing and forwarding checks involving the proceeds of the conspiracy; sending and receiving wire transfers involving the proceeds of the conspiracy; and transferring the proceeds of the conspiracy via wire, U.S. Mail, and express package delivery services.

26. Defendants BURNS, ████, and MORRIS, and other members of the conspiracy, used the fraudulently obtained EIDL proceeds for their own personal benefit and the benefit of co-conspirators, including for cash, travel, and luxury goods.

*Overt Acts*

27. In order to accomplish the objectives of the conspiracy, defendants BURNS, ███, and MORRIS committed or caused to be committed, the following overt acts, among others, in furtherance of the conspiracy:

   a. Between in or around June 2020, and in or around July 2020, ███ opened the ███ Chase account within the District of Delaware and sent at least $138,500 in proceeds obtained from fraudulent EIDL applications to the INDIVIDUAL A Chase account as follows:

| Date | Amount | Type | Account From | Account Two |
|---|---|---|---|---|
| 6/30/2020 | $138,500 | Check | ███ Chase | INDIVIDUAL A Chase |

   b. Between in or around July 2020, and in or around August 2020, MORRIS sent at least $213,000 in proceeds obtained from fraudulent EIDL applications to the BURNS Woodforest account as follows:

| Date | Amount | Type | Account From | Account To |
|---|---|---|---|---|
| 7/22/2020 | $140,000 | Check | MORRIS Wells Fargo | MORRIS BOA |
| 8/3/2020 | $98,515 | Cashier's Check | MORRIS BOA | BURNS Woodforest |
| 8/11/2020 | $115,000 | Check | MORRIS Woodforest | BURNS Woodforest |

(All in violation of 18 U.S.C. §§ 1956(h)).

### NOTICE OF FORFEITURE

Upon conviction of the offense alleged in Count One this Indictment, the defendants SWITZERLAND MONET BURNS, ███, and COURTNEY CHRISTOPHER MORRIS shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(1) any property, real or personal, involved in such offense, and any property traceable to such property.

If the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

A TRUE BILL:

_____
Foreperson

DAVID C. WEISS
United States Attorney

BY: _____
Christopher R. Howland
Assistant United States Attorney

Dated: April 26, 2022